UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Ashley M.,

        Plaintiff,

        v.                              Civil Action No. 2:20–cv–195

Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER
(Docs. 25, 28)

Plaintiff Ashley M. brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act, requesting review and remand of the decision of the Commissioner of Social

Security denying her application for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  Pending before the Court are Plaintiff's motion to reverse the

Commissioner's decision (Doc. 25), and the Commissioner's motion to affirm the same (Doc.

28).  For the reasons stated below, Plaintiff's motion is DENIED, the Commissioner's motion is

GRANTED, and the Commissioner's decision is AFFIRMED.

## Background

Plaintiff was 37 years old on her alleged disability onset date of September 30, 2016.

(AR 197, 427.)  She graduated from high school and completed two years of college.  (AR 237,

477.)  Although Plaintiff estimates she has held "[c]lose to 30" jobs in her lifetime (AR 238), the

ALJ found her relevant prior work experience includes jobs as a cashier and a pharmacy

technician (AR 196, 435–39).  Plaintiff is married and has no children.  (AR 428.)  She last

reported living in Barre, Vermont, with her partner and her partner's parents.  (AR 237.)

Plaintiff suffers from irritable bowel syndrome, gastro-esophageal reflux disease (GERD), obesity, back pain, anxiety, and depression.  (AR 240–43, 317–18, 336, 611, 614.)  Plaintiff also suffers from symptoms of bipolar disorder and delusional disorder.  (AR 114, 240, 247, 249.)  Plaintiff has been diagnosed with bipolar disorder, but she describes her diagnosis as "depression with social anxiety."  (AR 110, 114, 127.)  Plaintiff was also diagnosed with delusional disorder in 2019.  (AR 114.)  Although there is record evidence that Plaintiff "presents with odd beliefs of the supernatural" (AR 60) she "does not consider her unusual thoughts/beliefs delusional" (AR 110).  When Plaintiff is experiencing depression, she "can't get out of bed," and she "mostly spend[s] time watching TV or sleeping."  (AR 247.)  Plaintiff also reports that she has "no desire" to do the things she once enjoyed," and that she is "scared of being around other people."  (AR 249.)  When Plaintiff does leave the house, she has "quite a lot of difficulty . . . being around people."  (AR 248.)  She has anxiety when venturing outside because she does not like people and "because of worry about irritable bowel episodes."  (Id.)

When discussing her gastrointestinal symptoms, Plaintiff noted that in the leadup to an episode she experiences significant pain and an urgent need to use the restroom.  (AR 242.)  Plaintiff endures "anxiety around whether there will be a bathroom or an available place where [she] can use [the bathroom]" or whether she will "be in a situation where [she] need[s] to go to the bathroom and [she] can't."  (Id.)  Plaintiff also reports ongoing back pain that makes it difficult for her to sit in one position for extended periods of time or to lift heavy objects.  (AR 241–43.)  In 2015, Plaintiff was assessed with mild degenerative disk disease of the lumbar spine.  (AR 683.)  However, Plaintiff's doctors have recorded her gait as normal, noted no pain with weightbearing, and found that Plaintiff's spine was of a normal curvature.  (AR 847.)  Plaintiff reports that she takes Tylenol several times per day to manage her back pain.  (AR 241–

42.)

Plaintiff is a transgender woman who received sex reassignment surgery in 2012.  (AR
241, 582–83.)  Since at least 2016, Plaintiff has experienced urinary incontinence and vaginal
dampness as a result of this surgery.  (AR 583–84.)  Plaintiff also reports chest pain from breast
augmentation and has struggled with gender identity disorder and gender dysphoria for much of
her life.  (AR 277, 600–08.)

On May 23, 2018, Plaintiff filed an application for DIB and SSI alleging disability
beginning on September 30, 2016.  (Doc. 25 at 1.)  In her application, Plaintiff alleged disability
due to depression, anxiety, arthritis, degenerative disk disease, scoliosis, posttraumatic stress
disorder (PTSD), right foot pronation, fixation on "unusual thoughts," Vitamin D deficiency,
being overweight, general feelings of unwellness, gender identity disorder, social anxiety,
insomnia and nightmares, acid reflux, vagina dampness after constructive surgery, urinary
incontinence, chest pain from breast augmentation, irritable bowel syndrome, and suicidal
ideation.  (AR 277, 476.)  Plaintiff also alleges disability because she does not get along with
others, she hardly ever leaves the house, and she is angry and irritable.  (*Id.*)

Plaintiff's application was denied both initially and after reconsideration.  (AR 346, 363.)
She then filed a timely request for an administrative hearing.  (AR 384.)  Administrative Law
Judge (ALJ) Matthew G. Levin conducted the hearing on November 20, 2019.  (AR 233.)
Plaintiff appeared and testified at the hearing and was represented by counsel.  (*Id.*)  Vocational
expert Bethany Pyro also testified at the hearing.  (*Id.*)  On January 17, 2020, the ALJ issued a
decision finding that Plaintiff was not disabled under the Social Security Act from her alleged
disability onset date through the date of the decision.  (AR 206–32.)  The ALJ subsequently
issued a revised unfavorable decision on February 13, 2020, after consideration of additional

medical evidence dating to 2015–2018 that Plaintiff had not previously submitted.  (AR 180–98.)

On April 10, 2020, Plaintiff filed a request for Appeals Council review.  (AR 424–26; *see* AR

575–81.)  The Appeals Council denied Plaintiff's request for review, rendering the ALJ's

decision the final decision of the Commissioner.  (AR 1–7.)  Having exhausted her

administrative remedies, Plaintiff filed the Complaint in this action on December 8, 2020.  (Doc.

5.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See*

*Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to

determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to

determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the

ALJ to determine whether that impairment "meets or equals" an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The

claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.

*Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the

claimant's residual functional capacity (RFC), which means the most the claimant can still do

despite his or her mental and physical limitations based on all the relevant medical and other

evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).

The fourth step requires the ALJ to consider whether the claimant's RFC precludes the

performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at

the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R.

§§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps

one through four, *Butts*, 388 F.3d at 383, and at step five, there is a "limited burden shift to the

Commissioner" to "show that there is work in the national economy that the claimant can do,"

*Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that, at step five, the

Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Levin first determined that Plaintiff had not

engaged in substantial gainful activity since her alleged disability onset date of September 30,

2016.  (AR 183.)  At step two, the ALJ found that Plaintiff had the following severe

impairments: irritable bowel syndrome, obesity, affective disorder (variedly diagnosed as

depression and bipolar disorder), and an anxiety disorder.  (AR 184.)  The ALJ found that

Plaintiff's ongoing back pain related to degenerative disk disease was non-severe because it did

"not result in any significant limitation in her ability to perform basic work activities."  (AR

185.)  The ALJ also noted Plaintiff's alleged limitation due to a delusional disorder, but found

that the record "fail[ed] to reveal evidence to establish such as a medically determinable

impairment."  (*Id.*)  At step three, the ALJ determined that none of Plaintiff's impairments, alone

or in combination, met or medically equaled the severity of a listed impairment.  (AR 187.)  The

ALJ also concluded that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria

of the listing.  (AR 188.)  The ALJ found that Plaintiff had no limitation in understanding,

remembering, or applying information; and moderate limitation in (a) interacting with others;

(b) concentrating, persisting, or maintaining pace; and (c) adapting or managing herself.  (AR

188–89.)

The ALJ next determined that Plaintiff had the RFC to perform "light work," as defined

in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [S]he is able to frequently climb stairs and to occasionally climb ladders, ropes and scaffolds.  She is able to balance, stoop, and kneel without limitation and to frequently crouch and/or crawl.  She can understand and remember simple 1-2 step tasks in a low production setting (no fast pace quotas) and when doing so can sustain concentration, persistence and pace for 2-hour increments throughout the course of an 8-hour workday and 40-hour workweek.  She can sustain brief and superficial interaction with the general public and routine interaction with co-workers and supervisors and can tolerate simple changes to work routine.

(AR 190.)  Given this RFC, the ALJ found that Plaintiff was not capable of performing any of her past relevant work as a cashier or a pharmacy technician, as the work was actually or is generally performed.  (AR 196–97.)  However, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including the jobs of garment sorter, mail sorter, and price marker.  (AR 197–98.)  The ALJ concluded that Plaintiff had not been under a disability from her alleged disability onset date of September 30, 2016 through the date of the decision.  (AR 198.)

### Additional Evidence Submitted to the Appeals Council

In appealing the ALJ's decision to the Appeals Council, Plaintiff included new progress notes from her therapy treatment dating from November 2019 to March 2020.  (AR 19–83, 109–30.)  Plaintiff also included new treatment records from November 2019 to March 2020, addressing both physical and mental health concerns (AR 84–108, 131–76), and an April 15, 2020 medical opinion from her therapist Ann Burzynski, N.P.  (AR 9–14.)

After reviewing these records, the Appeals Council denied Plaintiff's request for review because (1) the newly submitted evidence dated on or after February 13, 2020—the date of the ALJ decision and the end of the period at issue—would not have affected the ALJ's decision that Plaintiff was not disabled; and (2) the newly submitted records applicable to the period at issue

did not show a reasonable probability that they would change the ALJ's decision.  (AR 2.)

## **Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death[,] or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his or her "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's decision, the Court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The Court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support that decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is "more than a mere scintilla"; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  The substantial evidence standard is "very deferential," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to*

*conclude otherwise.*"  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Nonetheless, in its deliberations, the Court should bear in mind "that the Social Security Act is a

remedial statute to be broadly construed and liberally applied."  *Dousewicz v. Harris*, 646 F.2d

771, 773 (2d Cir. 1981).

<u>**Analysis**</u>

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and

does not comply with applicable legal standards because: (1) the ALJ erred in his assessment of

Plaintiff's delusional disorder, finding it was not a medically determinable, severe impairment;

(2) the ALJ erred in his evaluation of the opinion evidence in the record; and (3) the Appeals

Council erred "in finding that the medical opinion from the new treating psychiatric nurse

practitioner and other medical evidence submitted to it would not have changed the outcome of

the decision."  (Doc. 25-2 at 12.)  The Commissioner responds that: (1) any error in the ALJ's

assessment of Plaintiff's delusional disorder is harmless because the ALJ considered Plaintiff's

delusions at the RFC stage; (2) the ALJ properly found the treating therapist's opinion to be less

persuasive than the state agency consultants' assessments; and (3) the evidence Plaintiff

submitted to the Appeals Council was not new and there was no reasonable probability the

evidence would alter the outcome of the case.  (Doc. 28.)

After considering the parties' arguments and reviewing the record, the Court finds that

the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision.

**I.      The ALJ properly assessed Plaintiff's delusion disorder.**

Plaintiff specifically contends that the ALJ erred because he did not follow the "slight

abnormality" standard when concluding that Plaintiff's delusion disorder was not a severe,

medically determinable impairment at step two.  (Doc. 25-2 at 2.)

It is Plaintiff's burden to show at step two that she has a "severe" impairment or combination of impairments, meaning an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c); *see* 20 C.F.R. §§ 404.1522, 416.922; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").  "[T]he standard for a finding of severity . . . is de minimis and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)).  An impairment is "not severe" when medical evidence establishes "only a slight abnormality . . . [,] which would have no more than a minimal effect on [the claimant's] ability to work."  SSR 85-28, 1985 WL 56856, at *3 (1985).

The ALJ concluded that "[a] review of [Plaintiff's] records, as a whole, . . . fails to reveal evidence of medically documented findings consistent with a delusional disorder."  (AR 186.)  The ALJ noted that psychiatric nurse practitioner Tracy Hobbs-Johnson indicated a "working diagnosis" of a delusion disorder in July 2019, but the ALJ concluded that the diagnosis was based on Plaintiff's subjective reporting of symptoms of delusional beliefs, with limited evidence in the record of objective medical findings to support such a diagnosis.  (AR 185.)  Plaintiff contends that her delusion disorder is a medically determinable impairment because her "symptoms meet the DSM V definition of delusional disorder."  (Doc. 25-2 at 3.)  However, "such a diagnosis, standing alone, is insufficient to establish a severe impairment under applicable regulations."  *Sanborn v. Berryhill*, Case No. 2:16-CV-132, 2017 WL 923248, at *11 (D. Vt. Mar. 8, 2017).  Although Plaintiff expressed a belief about living in a computer simulation (*see, e.g.*, AR 54, 110, 249, 456), there are treatment notes observing that Plaintiff

"seems to have a sense that [her] delusions may not be real" (AR 791).  Additionally, there is record evidence supporting the ALJ's conclusion that Plaintiff's delusions did not constitute a severe impairment.  Plaintiff's thought process was found to be coherent and logical (AR 185 (citing AR 852)); within a few months of initiating treatment, Plaintiff "appear[ed] less depressed with a bit brighter affect and with 'no mention of any delusional content'" (AR 185–87 (quoting AR 912)); and Plaintiff's abnormal thought process improved significantly when she was taking her medication (AR 970).

As the ALJ noted, "a determination of 'disability' under the [Social Security] Act turns upon consideration of a claimant's functional limitations and not upon any specific diagnosis assigned." (AR 187.)  The "slight abnormality" standard functions to identify and remove claims involving inconsequential impairments, not to require that all impairments beyond a slight abnormality be characterized as severe.  *See* SSR 85-28, 1985 WL 56856, at *3 (1985).  However, even if the ALJ erred by not deeming Plaintiff's delusion disorder a severe impairment, "the omission of an impairment at step two does not in and of itself require remand and may be deemed harmless error."  *Rye v. Colvin*, Civil Action No. 2:14-cv-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016).

This is particularly true where the ALJ continued the analysis beyond step two and the record demonstrates that the ALJ considered all of the claimant's impairments in combination in his RFC determination.  An ALJ is required to consider the "combined effect of all of [Plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. §§ 404.1523(c), 416.923(c); *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding alleged step-two error harmless because ALJ considered impairments during subsequent steps); *Schamback v. Berryhill*, Civil

No. 3:18CV94 (AWT), 2019 WL 1292488, at *2 (D. Conn. Mar. 21, 2019) ("If an ALJ errs by

concluding that an impairment is non-severe, the error would be harmless where the sequential

evaluation process continued and the plaintiff's 'non-severe' impairments were analyzed.").

At step two, the ALJ identified Plaintiff's severe impairments to include irritable bowel

syndrome, obesity, affective disorder (variedly diagnosed as depression and bipolar disorder),

and anxiety disorder.  (AR 184.)  The ALJ did not find delusion disorder to be a severe

impairment.  When determining Plaintiff's RFC, the ALJ stated that he considered all of

Plaintiff's "medically documented signs and symptoms and associated functional limitations,

which could be reasonably anticipated to result from her other . . . medically determinable mental

impairments."  (AR 187.)  The decision reflects that the ALJ explicitly accounted for Plaintiff's

symptoms of delusions, concluding that the medical evidence did not indicate functional

limitations.  (*See* AR 193 (noting that although Plaintiff presented for a 2019 psychiatric

evaluation with "delusional/magical thought content and thoughts of unreality, her examination

is otherwise noted to be unremarkable"); AR 193–94 (noting ongoing course of medication

resulted in improvement and "fewer notation[s] of ongoing delusions); *Id.* (no mention of

delusional content as of May 2019); AR 194 ("As of August 2019, the claimant's records note

positive changes over time, including increased social engagement . . . while noting no

delusional thought content mentioned in some time.")).  The medical evidence cited in the

decision supports the ALJ's observations.

In response to the Commissioner's claim that Plaintiff has not cited evidence

demonstrating a more limited RFC due to delusion disorder (Doc. 28 at 4), Plaintiff notes her

treating therapist Sada Dumont's opinion that, among other health concerns, delusional thinking

raises the risk of "severe and recurrent episodes of Major Depression over her lifetime."  (Doc.

29 at 4.)[1]  Apart from the fact that it would be difficult to account for future risk of depressive episodes in the determination of RFC, the ALJ's decision nevertheless reflects that he considered the limiting effects of depression.  The ALJ considered Plaintiff's reports of how depression limits her on a daily basis but determined that the extent of her reported limitations was not fully consistent with the other record evidence on this issue.  (AR 191.)

The other record evidence that the ALJ considered to reach this conclusion included Washington County Mental Health records from 2015 to 2018 consisting of out-patient treatment without significant functional limitations.  (AR 192.)  The ALJ traced Plaintiff's history of treatment for depression between 2016 and 2019, including improvements with medication and a lack of findings to indicate limitations on her mental processes.  (AR 193.)  The ALJ also cited the 2018 records of Plaintiff's primary care provider, who reported Plaintiff's mood to be "neutral to only mildly depressed," with appropriate behavior and "coherent and logical thought process."  (AR 193.)  The ALJ further noted the 2019 records of Nurse Practitioner Hobbs-Johnson indicating improvement with medication and apparently significantly reduced reporting of symptoms of delusion (AR 193–194), and the 2019 evaluation of Dr. Black, who did not identify a neurocognitive disorder (AR 194).  Nevertheless, the ALJ referenced Dr. Black's observation that Plaintiff experienced social difficulties, and further noted that the assessed RFC accounted for such difficulties.  (AR 194.)

Given the ALJ's analysis of Plaintiff's impairments in combination at the RFC stage, Plaintiff's claim of ALJ error at step two does not warrant remand.

## II.   The ALJ's assessment of the medical opinions was proper.

Plaintiff asserts that the ALJ erred in finding (i) the opinions of state agency consulting

---

[1]  The Mental Impairment Questionnaire completed by Ms. Dumont did not identify delusion disorder as a primary or secondary diagnosis.  (AR 986).  It recorded a primary diagnosis of "Major Depressive Disorder."  (*Id.*)

psychologists Russell Phillips, Ph.D., and Howard Goldberg, Ph.D., to be "persuasive" regarding Plaintiff's mental health limitations; and (ii) the opinions of treating therapist Sada Dumont, M.S., to be "non-persuasive" regarding Plaintiff's mental health limitations. (Doc. 25-2 at 5–12.)

As required by the new regulations governing the assessment of medical opinions, the ALJ explained his findings regarding the supportability and consistency of each opinion, pointing to specific evidence in the record supporting these findings. As explained below, the ALJ applied the correct legal standard, and substantial evidence supports the decision.

### A.      New Regulation Regarding Assessment of Medical Opinions

For applications filed on or after March 27, 2017, the Social Security Administration has fundamentally changed how ALJs assess the medical opinions of treating sources. Previously, the "treating physician rule" required that the ALJ assign "controlling weight" to "well-supported" treating source's medical opinions that are "not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If controlling weight was not afforded to these opinions, the ALJ was required to apply certain factors in determining what weight to give them. *Id.*; *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

The new regulations, however, provide that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, ALJs must "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). ALJs must consider the same enumerated "factors" considered under the prior regulation, "as appropriate," and follow the

particular requirements listed in 20 C.F.R. §§ 404.1520c(b) and 416.920c(b).  20 C.F.R.

§§ 404.1520c(a), 404.1520c(c)).

        Under the new regulations, the "most important factors" to be considered when

evaluating the persuasiveness of medical opinions and prior administrative medical findings are

"supportability" and "consistency."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).[2]  "Supportability"

means that "[t]he more relevant the objective medical evidence and supporting explanations

presented by a medical source are to support [the] medical opinion(s) or prior administrative

medical finding(s), the more persuasive the medical opinions or prior administrative medical

finding(s) will be."  *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" means that "[t]he

more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.*

§§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ must explain in his decision how he "considered

the supportability and consistency factors for a medical source's medical opinions or prior

administrative medical findings."  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

**B.    Medical Opinions**

    **1.    Dr. Phillips's and Dr. Goldberg's Opinions Regarding Plaintiff's
        Limitations and RFC**

On October 5, 2018, non-treating, non-examining state agency consultant Russell

Phillips, Ph.D., provided an RFC assessment of Plaintiff.  (AR 296–302.)  On March 4, 2019,

non-treating, non-examining state agency consultant Howard Goldberg, Ph.D., provided an

---

[2]  ALJs will also consider factors such as the medical source's relationship with the claimant (including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of treatment relationship, and examining relationship) and whether the medical source specializes in the area under review.  *See* 20 C.F.R. §§ 404.1520c(1)–(4), 416.920c(1)–(4).

updated RFC assessment of Plaintiff upon Plaintiff's request for reconsideration.  (AR 316–23.)

Based on their review of the record, Dr. Phillips and Dr. Goldberg each opined that Plaintiff

suffered from the following "[s]evere" impairments: disorders of the gastrointestinal system;

anxiety and obsessive-compulsive disorders; and depressive, bipolar, and related disorders.  (AR

297, 318.)  In addition, Dr. Goldberg opined that Plaintiff suffered from the "[s]evere"

impairment of obesity and the non-severe impairment of a back disorder.  (AR 318.)  Dr. Phillips

noted that Plaintiff can "maintain attention for two hours at a time and persist at simple tasks

over eight–and forty–hour periods with normal supervision."  (AR 301.)  Dr. Goldberg

concluded that Plaintiff could sustain concentration, persistence, and pace "over two hour

periods over typical work day/week for simple 1–2 step tasks in low production norm setting,

with social and adaptive limitations."  (AR 322.)  With respect to limitations on social

interaction, Dr. Phillips and Dr. Goldberg both concluded that Plaintiff "can tolerate the

minimum social demands of simple–task settings" and "would not be able to tolerate sustained

contact with the public."  (AR 302, 323.)  Dr. Phillips asserted that, "with the exception of being

unable to manage sustained contact with the public, the longitudinal evidence does not indicate

any marked mental limitations, and the Function Report is consistent [with that]."  (AR 282.)

Upon reconsideration, Dr. Goldberg opined that the "total evidence was found to be consistent

with the longitudinal picture."  (AR 316.)  Additionally, while Dr. Phillips's conclusions "largely

summarize[] and assess[] the total evidence," upon reconsideration, Dr. Goldberg concluded that

the Psychiatric Review Technique and Mental RFC should be "somewhat more restrictive to

more accurately reflect the total evidence."  (AR 316–17.)

     The ALJ found Dr. Phillips's and Dr. Goldberg's opinions to be persuasive because they

were supported by "specific medically documented findings noted within [Plaintiff's] treatment

records," "consistent with the evidence of record as a whole," and "based upon their level of medical expertise in assessing mental impairments and the fact that they were given an opportunity to review [Plaintiff's] complete medical records compiled through the date of their assessments." (AR 195.)

Plaintiff asserts that the ALJ erred in finding Dr. Phillips's and Dr. Goldberg's opinions to be supported and consistent with the record. (*See* Doc. 25-2 at 6–8.) Regarding the supportability factor, Plaintiff references her treatment notes and a July 2018 Mental Status Report from her primary care provider. (*Id.*) In those notes, Plaintiff's providers assessed agoraphobia, social anxiety, depressed mood, and flat affect, among other conditions. (*Id.*) Dr. Phillips addressed these notes in his analysis, observing that the treatment evidence "reports variable symptom severity with fluctuating ability to manage interactions outside her home," but concluded that the notes do not "indicate a complete inability to function." (AR 282.) Dr. Goldberg summarized Plaintiff's health records from 2015 through 2019, citing particular evidence in the record in reaching his determination. (*See* AR 316–17.) Neither Dr. Phillips nor Dr. Goldberg opined that Plaintiff's mental health struggles were trivial. In fact, both doctors concluded that Plaintiff has sustained concentration and persistence limitations and her ability to interact appropriately with the general public is markedly limited. (AR 286, 322–23.) After considering her mental impairments, Dr. Phillips wrote that Plaintiff should be able to "persist at simple tasks over time" but did not indicate any ability for Plaintiff to complete more complicated tasks. (AR 287.) Similarly, Dr. Goldberg wrote that Plaintiff's abilities are "[l]imited for complex tasks and high production norm tasks." (AR 322.) Further, Dr. Goldberg noted that Plaintiff may experience "[e]pisodic exacerbations in psych symptoms" that could "temporarily undermine cognitive efficiency." (*Id.*) Dr. Phillips's and Dr. Goldberg's opinions

are supported by the record.

Plaintiff further contends that Dr. Phillips and Dr. Goldberg did not adequately consider Plaintiff's records from WCMH between April 2015 and July 2018, and the additional records submitted after their file review through the date of the ALJ decision, and thus "it cannot be said that their opinions are supported by or consistent with substantial evidence." (Doc. 25-2 at 9.) However, Plaintiff has not shown that the additional records or opinions "differ materially" from the record evidence that Dr. Phillips and Dr. Goldberg reviewed. *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016). With respect to the materials submitted after the consulting doctors reviewed the file, there is no "unqualified rule that a medical opinion is superseded by additional material in the record." *Id.* "A state agency consultant's opinion does not become 'stale' due to the existence of subsequent medical records as long as 'the additional evidence does not raise doubts as to the reliability' of the opinion and the new evidence does 'not differ materially' from the previously considered evidence." *Karen S. v. Comm'r of Soc. Sec.*, Case No. 2:18-CV-00099, 2020 WL 4670911, at *13 (D. Vt. Aug. 11, 2020) (quoting *Camille*, 652 F. App'x at 28 n.4).

The WCMH records from 2015 through 2018 are consistent with the record as a whole. In 2015 and 2016, Plaintiff regularly attended a therapeutic yoga group and a "cooking as self-care" class. (*See* AR 1048–76.) After yoga intervention, Plaintiff reported that she "really enjoyed it and felt more calm by the end of group" (April 13, 2015, AR 1048), "finds this group helpful" (April 27, 2015, AR 1050), "felt a lot better by the end of the group, both physically (with lower back pain) and emotionally" (May 4, 2015, AR 1051), "felt less overwhelmed by the end of group and reported that she would like to be more disciplined about incorporat[ing] these coping strategies in to her life" (May 11, 2015, AR 1052), "would like to stop worrying so much

and that yoga helps her be more present" (May 18, 2015, AR 1053), "knows she would feel better if she did more yoga and that is her goal" (June 8, 2015, AR 1054), and felt that "'group makes a big difference and brings her stress down'" (June 15, 2015, AR 1055). On June 29, 2015, Plaintiff reported she was "ready to make a change in her life around doing less gaming and taking care of herself." (AR 1056.) The following week, after she stopped gaming, Plaintiff "reported that she felt a big change in her stress level," and "lost weight, had better sleep and took lots of walks." (AR 1057.)

On May 31, 2016, Plaintiff's provider noted she was "interested in being a peer leader in a support group for local peer trans folks," and "[a] discussion on how to start a therapeutic art group for the client and other local trans folks ensued." (AR 1032.) The provider reported that Plaintiff "is inspired and finds this very supportive." (*Id.*) On July 12, 2016, Plaintiff "reported she would like to continue with doing more groups as they tend to support her stress level and uplift her mood" and thus she and the provider planned a group together where Plaintiff would serve as a peer leader. (AR 1033.) On January 23, 2017, Plaintiff's provider described her as "highly intelligent and inquisitive" though she "struggles with intense anxiety related to physical health issues." (AR 1044.)

In a March 30, 2017 client status assessment, Plaintiff reported "ongoing depressive symptoms, difficulty with emotional regulation, and increasing symptoms of anxiety with physical symptoms potentially related to the increasing anxiety." (AR 1040.) Her provider reported her appearance as appropriate, her motor activity as calm, her thought and perception as blocked/tangential, her insight as good, her candor as engaged, her judgment as fair, her concentration as adequate, her mood and affect as labile, and her behavior as cooperative. (AR 1041.)

In April 2017 Plaintiff began regularly seeing Roxanne Rondeau, MA, an outpatient psychotherapist.  (AR 1084.)  Throughout the course of treatment, Ms. Rondeau and Plaintiff discussed how anxiety and other medical concerns affected Plaintiff physically and mentally (AR 1086), Plaintiff's concerns about how others perceive her (AR 1090, 1128), how to increase her social engagement and the quality of her interactions (AR 1098, 1100, 1126, 1149, 1176), her suspicion that we live in a simulation (AR 1102), her concerns and feelings about being trans (AR 1108, 1112, 1114, 1122, 1157, 1159, 1186), and the impact of gaming on her life (AR 1130, 1136, 1145, 1170), among other concerns.  The supplemental records from 2019 and 2020 are similarly consistent.  In Plaintiff's sessions with Ms. Dumont, she alternated between presenting as depressed, discussing her symptoms of hypersomnia and fatigue (AR 20, 23, 32, 34, 37, 41, 43, 45) and euthymic (AR 25, 27, 47).  During treatment with Ms. Burzynski, Plaintiff reported decreased symptoms with medication.  (AR 66, 69, 75, 79, 95.)

Because the additional records are consistent with, and do not raise doubts as to the reliability of, the previous medical records the consulting physicians considered, the Court cannot conclude that the ALJ's decision was unsupported by substantial evidence.

Plaintiff further argues that the record does not support the ALJ's conclusion that the consultants' opinions were consistent with Plaintiff's "level of activity."  (Doc. 25-2 at 9.)  However, the ALJ did not conclude that Plaintiff's level of activity meant that she could work.  Rather, the ALJ cited Plaintiff's activities to consider the extent of her limitations.  For example, as summarized by the ALJ, Plaintiff reported that she left the house twice a week, once to go grocery shopping and once for therapy (AR 768), attended a Magic tournament (AR 1178), and visited a friend (AR 1174).  In addition, Plaintiff considered "the possibility of going back to school or volunteering to work with animals" (AR 813) and sought to get more involved in the

Magic community (AR 1178).

The ALJ was not required to "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (quoting *Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).  The ALJ was required, however, to "explain the bases for his findings with sufficient specificity to permit meaningful review," *Sewar v. Berryhill*, Case No. 17-CV-6211L, 2018 WL 3569934, at *2 (W.D.N.Y. July 25, 2018).  As explained above, the ALJ satisfied that requirement in this case.

In sum, Dr. Phillips's and Dr. Goldberg's opinions are supported by, and consistent with, the medical record.  Therefore, substantial evidence supports the ALJ's determination that the consulting psychologists' opinions were persuasive.  (*See* AR 195.)

### 2.    Ms. Dumont's Opinion Regarding Plaintiff's Mental Health RFC

In November 2018, licensed therapist Sada Dumont, M.S., began treating Plaintiff individually on a weekly basis.  (AR 986.)  Ms. Dumont completed a Mental Impairment Questionnaire on December 9, 2019.  (AR 986–92.)  Ms. Dumont noted that Major Depressive Disorder was Plaintiff's primary diagnosis.  Although Plaintiff was receiving mental health treatment on an ongoing basis, Ms. Dumont determined Plaintiff had achieved only "marginal adjustment"[3] with episodes of deterioration.  (AR 986, 988.)  Ms. Dumont marked boxes for a variety of signs and symptoms experienced by Plaintiff, including "[d]elusions"; "[d]iminished interest in almost all activities"; "[d]ecreased energy"; "[d]ifficulty concentrating or thinking"; and "[i]mpaired executive functioning."  (AR 988–89.)

---

[3]  The questionnaire provided that a patient achieves only "marginal adjustment" when "the patient's adaptation to daily life is fragile, with minimal capability to adapt to changes in their environment or to demands that are not already part of their daily life."  (AR 988.)

Ms. Dumont was also asked to check boxes in sixteen categories corresponding to
Plaintiff's functional limitations based on her examination and treatment of Plaintiff. (AR 989-
91.) Ms. Dumont indicated that Plaintiff was "[u]nable to [p]erform [s]atisfactorily," meaning
she had "marked" limitations, in ten of the categories, including "maintain[ing] attention for a
two hour segment"; "maintain[ing] regular attendance and be[ing] punctual"; "sustain[ing] an
ordinary routine without special supervision"; "work[ing] in coordination with or proximity to
others without being unduly distracted"; "complet[ing] a normal workday and workweek without
interruptions from psychologically based symptoms"; perform[ing] at a consistent pace without
an unreasonable number and length of rest periods"; "accept[ing] instructions and respond[ing]
appropriately to criticism from supervisors"; "get[ting] along with co-workers or peers without
unduly distracting them or exhibiting behavioral extremes"; "respond[ing] appropriately to
changes in a routine work setting"; and "deal[ing] with normal work stress." (AR 990.) Ms.
Dumont also opined that Plaintiff had "[m]arked" limitation in understanding, remembering, or
applying information. (*Id.*) Finally, Ms. Dumont concluded that Plaintiff had "[e]xtreme"
limitations when interacting with others; concentrating, persisting, or maintaining pace; and
adapting or managing herself. (AR 991.) Ms. Dumont opined that Plaintiff could be expected to
perform a job at less than 80% the efficiency rate of an average worker and would miss four or
more days of work per month due to her impairments or treatment. (*Id.*)

The ALJ found this opinion to be "not persuasive." (AR 195.) In explaining this
assessment, the ALJ noted that Ms. Dumont completed a "'check[-]off' type form" and "fail[ed]
to cite to any specific medically documented findings noted upon examination to support the
degree of limitation assessed." (AR 190; *see* AR 195.) The fact that a provider offers an opinion
in a "'check[-]off' type form" (AR 190) is "not a sufficient reason to discount it where the

clinical and diagnostic bases for the opinion are included." *Gerbasi v. Comm'r of Soc. Sec.*, Case No. 5:14-cv-246, 2015 WL 4470001, at *8 (D. Vt. July 21, 2015).  Plaintiff emphasizes that the Questionnaire included an "Appendix A" in which "Ms. Dumont provided detailed responses to questions regarding response to treatment, clinical findings, prognosis, and an explanation."  (Doc. 25-2 at 10; AR 992.)  Although Appendix A contains Ms. Dumont's conclusions about Plaintiff's functional capacity (e.g., Plaintiff "continues to experience a deterioration in her functioning" as evidenced by "limited capacity" to effectively cope with stress, engage in activities of daily living, sustain a regular routine and initiate or persist on a given task, etc.), these conclusions are not grounded in any clinical or diagnostic findings. Appendix A essentially reiterates Ms. Dumont's responses earlier in the Questionnaire without reference to medically documented findings.  (AR 992.)

For this reason, the Court cannot find error in the ALJ's conclusion that Ms. Dumont's treatment notes did not contain the requisite findings to support the degree of limitation assessed. (AR 195–96.)  "Treating sources are not required to provide specific citations to the medical record to support their opinions."  *Gerbasi*, 2015 WL 4470001, at *8.  However, the ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." SSR 16-3P, 2016 WL 1119029, at *4 (Mar. 16, 2016).   In Appendix A, Ms. Dumont wrote that Ashley's symptoms, "including severely depressed mood, anhedonia, constant fatigue, hypersomnia[,] and recurrent thoughts of death, significantly diminish her ability to complete activities of daily living."  (AR 992.)  Ms. Dumont's treatment notes report that Plaintiff's mental state alternated between depression (AR 929, 931, 937, 956, 962) and euthymia (AR 939, 945, 947, 954, 958).  Ms. Dumont's notes, however, record brief, conclusory statements about

how Plaintiff's mental health appears each week, and do not reflect the degree, breadth, or severity of limitation reflected in her Mental Impairment Questionnaire.

Finally, the ALJ determined that Ms. Dumont's assessment of Plaintiff's functional limitation is "inconsistent with the evidence of record as a whole, including medically documented findings noted upon examination throughout the claimant's treatment records, . . . and evidence of record with regard to the claimant's overall level of activity." (AR 190.) Plaintiff's symptoms of depression and anxiety are well documented in treatment notes from various providers. (*See* AR 825, 829, 831, 835, 837, 841, 883, 893, 927, 929, 937, 941, 954, 956, 958, 962.) However, as the ALJ observed, Plaintiff is "repeatedly noted to present as well-groomed and cooperative; fully oriented and with good attention. Her thought process is noted to be intact and her speech clear and spontaneous, while she is also found to have: good judgment, insight and impulse control." (AR 196, *see* AR 618, 622, 766, 771, 774, 778–79, 786, 790, 852, 855, 858, 896, 908, 911, 912, 915, 967, 970, 973, 977, 980.) The diagnosis of depression and anxiety is not adequate by itself to justify the significant functional limitations Ms. Dumont assessed. There is a record basis for the ALJ's conclusion that the substantial functional limitations identified by Ms. Dumont were not consistent with the record. Therefore, the ALJ did not err in deeming Ms. Dumont's opinion unpersuasive.

III.   **The new evidence submitted to the Appeals Council does not show a reasonable probability that it would change the outcome of the decision.**

Plaintiff contends that the Appeals Council erred in finding that the medical opinion from Plaintiff's new treating psychiatric nurse practitioner and other medical evidence submitted after the ALJ's decision would not have changed the disposition of Plaintiff's claim. The additional evidence consists of a Mental Impairment Questionnaire completed by Ann Burzynski, N.P., from April 15, 2020 (AR 9–14), Progress Notes from Washington County Mental Health

Services from December 5, 2019 through March 25, 2020 (AR 20–108, 152–176), records from

Central Vermont Medical Center from November 29, 2019 through February 20, 2020 (AR 110–

24, 133–42), and records from an Emergency Room visit at Central Vermont Medical Center on

November 8, 2019 (AR 125–30, 143–48).  Specifically, Plaintiff contends that these records

show that "Ms. Morway had a mental health deterioration, Ms. Hobbs-Johnson continued to

diagnose delusional disorder, Ms. Hall noted severe depression per the PHQ-9, and Ms.

Burzynski diagnosed major depressive disorder and PTSD, noting she would monitor

supernatural beliefs to determine if they are from PTSD or are psychotic."  (Doc. 25-2 at 13

(internal citations omitted)).

Upon a party's request, the Appeals Council will review a case if provided "additional

evidence that is new, material, and relates to the period on or before the date of the hearing

decision, and there is a reasonable probability that the additional evidence would change the

outcome of the decision."  20 C.F.R. § 404.970(a)(5).  If a claimant submits additional evidence

that "does not relate to the period on or before the date of the administrative law judge hearing

decision," "the Appeals Council will send . . . a notice that explains why it did not accept the

additional evidence and advises [the claimant of the] right to file a new application."  20 C.F.R.

§ 404.970(c).

New evidence submitted to the Appeals Council from the relevant period "becomes part

of the administrative record for judicial review when the Appeals Council denies review of the

ALJ's decision."  *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).  "Once evidence is added to the

record, the Appeals Council must then consider the entire record, including the new evidence,

and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to

the weight of the evidence currently of record.'"  *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir.

2015) (per curiam) (quoting prior version of 20 C.F.R. § 404.970(a)(3)).  "When the Appeals

Council denies review after considering new evidence, [the court] simply review[s] the entire

administrative record, which includes the new evidence, and determine[s], as in every case,

whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77

F.3d at 46.

      If the Appeals Council denies a request for review, "the ALJ's decision, and not the

Appeals Council's, is the final agency decision." *Lesterhuis*, 805 F.3d at 87.  "The Appeals

Council's reasoning for denying review therefore has no bearing on the court's review of the

Commissioner's decision." *Jessica R. v. Berryhill*, Case No. 5:17-cv-236, 2019 WL 1379875, at

*4 (D. Vt. Mar. 27, 2019).  The issue that remains is "whether the new evidence altered the

weight of the evidence before the ALJ so dramatically as to require" remand.  *Canady v. Comm'r*

*of Soc. Sec.*, Case No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4,

2017), *report and recommendation adopted*, 2017 WL 5484663 (Nov. 14, 2017).

      When considering the new evidence, the Court must consider if the evidence is

> (1) "new" and not merely cumulative of what is already in the record . . . [;] (2)
> material, that is, both relevant to the claimant's condition during the time period for
> which benefits were denied and probative . . . [; and (3) where there is] good cause
> for [the claimant's] failure to present the evidence earlier.

*Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (citations and

internal quotation marks omitted).  The Second Circuit has explained that "[t]he concept of

materiality requires . . . a reasonable possibility that the new evidence would have influenced the

[Commissioner] to decide [the] claimant's application differently."  *Id.*; *see Eusepi v. Colvin*,

595 F. App'x 7, 9–10 (2d Cir. 2014).

      The Commissioner asserts that "there was already evidence of [Plaintiff's November 8,

2019] emergency department visit in the record that the ALJ reviewed," and therefore the

records Plaintiff submitted to the Appeals Council related to that visit "would not change the

ALJ's decision." (Doc. 28 at 11.) Plaintiff responds that "the ALJ did not review the emergency

room visit from November 8, 2019" because "[t]he record cited by the Commissioner is an

Emergency/Crisis Assessment from WCMH, performed at the hospital." (Doc. 29 at 1.)

Plaintiff is correct that the record considered by the ALJ included an "Emergency/Crisis

Assessment" completed by emergency department crisis staff. (AR 1005–08.) The documents

Plaintiff subsequently provided included an "Emergency Record" completed by medical

professionals. (AR 125–30, 143–48.) Both records describe that Plaintiff arrived at the

emergency department presenting signs of an anxiety attack. (*See* AR 125, 1005.) The

Emergency/Crisis Assessment reports that Plaintiff came to the emergency department for an

anxiety/panic attack. (AR 1005.) The narrative notes that Plaintiff "expresse[d] concerns over

growing issues of anxiety" and that the "anxiety attacks happen predominately at nighttime, and

there is no clear precipitant for onset." (*Id.*) According to the crisis staff notes, personnel

"provided active listening, and emotional validation," and discussed a variety of options to help

mitigate anxiety and panic as it starts." (*Id.*) The assessment reports that Plaintiff was medically

cleared and discharged to go home, given a dose of Ativan for anxiety, provided a referral and

contact information for an appointment with Ms. Burzynski, and given contact information for

support calls as needed. (*Id.*)

The subsequently submitted Emergency Record provides that Plaintiff "[c]omplains of

depression at night for several weeks and tonight also feels anxious, short of breath and

sweating. States she feels afraid for no reason." (AR 126.) This document records Plaintiff's

"chief complaint" as "dark mood swings, feelings of dazed and depression and anxiety." (AR

127.) The document also reports her past medical history and the results of a physical

examination.  (AR 128–29.)  The medical professionals completed a medical screening exam and felt that Plaintiff was medically stable for psychiatric evaluation and disposition.  (AR 130.) Plaintiff was then discharged to her home, pending the WCMH crisis staff's assessment discussed above.  (*Id.*)

The information contained in these two documents are consistent with each other and with the record as a whole.  To the extent that Plaintiff argues that the ALJ's conclusion could have been affected by the fact that Plaintiff visited the emergency department due to having an anxiety attack, this information had previously been provided to the ALJ via the Emergency/Crisis Assessment.  (*See* AR 1005–08.)  Plaintiff asserts that the Emergency Record evidences a "mental health deterioration," and thus may have changed the ALJ's conclusion. (Doc. 25-2 at 12.)  However, this document is consistent with and largely reiterates the assessment previously provided to the ALJ, and therefore does not establish a reasonable probability that the information may have influenced the ALJ to decide Plaintiff's application differently.  *See Lisa*, 940 F.2d at 43.

Plaintiff also argues that "the opinion evidence provided by Ms. Burzynski[4] would likely have changed the outcome of the ALJ's decision." (Doc. 25-2 at 13.)  Ms. Dumont's mental health opinion from December 9, 2019 recounts the same time period and assesses many of the same limitations.  (*Compare* AR 9–14 *with* AR 990–91.)  Similar to Ms. Dumont's opinion, Ms. Burzynski's assessment did not reference clinical or diagnostic findings in support of the functional limitations assessed.  Consequently, there is not a reasonable probability that Ms. Burzynski's opinion would have altered the evidentiary record so as to change the outcome of the ALJ's decision.

---

[4] Ms. Burzynski had been treating Plaintiff for approximately three months at the time she rendered her opinion. (AR 9-14.)

The new evidence also included Progress Notes from Washington County Mental Health Services from December 5, 2019 through March 25, 2020 (AR 20–38, 52–62, 152–67, 170–76), and records from Central Vermont Medical Center from November 29, 2019 through February 20, 2020 (AR 110–24, 133–42).  Although these records describe Plaintiff's physical and mental state during that time period, much of the information in the providers' notes are duplicative of information already before the ALJ.  Plaintiff's therapists' notes describe Plaintiff presenting with depression (AR 20, 23, 32, 34, 37), anxiety (AR 53, 134), and delusions (AR 54, 133), which is well documented in the other records previously provided to the ALJ (AR 879–982).  The additional evidence does not so dramatically alter the weight of the evidence as to require a remand for further review and decision.  Thus, Plaintiff has not shown that the Appeals Council erred in finding that the new evidence submitted to it would not have changed the outcome of the decision.

## Conclusion

For these reasons, the Court DENIES Plaintiff's motion (Doc. 25), GRANTS the Commissioner's motion (Doc. 28), and AFFIRMS the decision of the Commissioner.  The Clerk shall enter judgment in favor of the Commissioner.

Dated at Burlington, in the District of Vermont, this 21st day of April 2023.

/s/ Kevin J. Doyle
Kevin J. Doyle
United States Magistrate Judge